1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HEIDI C. WOODSUM,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. C09-5370RJB-KLS

REPORT AND RECOMMENDATION

Noted for May 7, 2010

13        Plaintiff, Heidi C. Woodsum, has brought this matter for judicial review of the denial of

14  her applications for disability insurance and supplemental security income ("SSI") benefits.  This

15  matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

16  636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

17  Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

18  undersigned submits the following Report and Recommendation for the Court's review.

19                              FACTUAL AND PROCEDURAL HISTORY

20

21        Plaintiff currently is 51 years old.[1] Tr. 59.  She has a high school education and past work

22  experience as a security guard. Tr. 28, 127, 142, 300.

23        On February 22, 2006, plaintiff filed applications for disability insurance and SSI

24  benefits, alleging disability as of July 3, 2002, due to a recurrent and severe major depressive

25

26        [1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding
Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference
of the United States.

REPORT AND RECOMMENDATION - 1

disorder and post traumatic stress disorder ("PTSD"). Tr. 20, 98, 103, 141.  Her applications

were denied initially and on reconsideration. Tr. 59-63, 66, 71, 73.  A hearing was held before an

administrative law judge ("ALJ") on October 22, 2008, at which plaintiff, represented by

counsel, appeared and testified, as did a medical expert. Tr. 31-58.

On January 16, 2009, the ALJ issued a decision, determining plaintiff to be not disabled,

finding specifically in relevant part:

(1)   at step one of the sequential disability evaluation process,[2] plaintiff may
      have engaged in substantial gainful activity since her alleged onset date of
      disability;

(2)   at step two, plaintiff had "severe" impairments consisting of depression,
      PTSD and alcoholism in remission;

(3)   at step three, none of plaintiff's impairments met or equaled the criteria of
      any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)   after step three but before step four, plaintiff had the residual functional
      capacity to perform a full range of work at all exertional levels, but with
      certain non-exertional limitations;

(5)   at step four, plaintiff was unable to perform her past relevant work; and

(6)   at step five, plaintiff was capable of performing other jobs existing in
      significant numbers in the national economy.

Tr. 20-30.  Plaintiff's request for review was denied by the Appeals Council on May 9, 2009,

making the ALJ's decision the Commissioner's final decision. Tr. 1; 20 C.F.R. § 404.981, §

416.1481.

On June 22, 2009, plaintiff filed a complaint in this Court seeking review of the ALJ's

decision. (Dkt. #1-#3).  The administrative record was filed with the Court on September 8,

2009. (Dkt. #13).  Plaintiff argues the ALJ's decision should be reversed and remanded to the

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant
is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any
particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

REPORT AND RECOMMENDATION - 2

Commissioner for an award of benefits or, in the alternative, for further administrative

proceedings, for the following reasons:

(a)    additional evidence submitted to the Appeals Council requires reversal and
       remand of the ALJ's decision;

(b)    the ALJ erred in according any weight to the work plaintiff allegedly
       performed in 2006;

(c)    the ALJ erred in evaluating the medical evidence in the record;

(d)    the ALJ erred in assessing plaintiff's credibility;

(e)    the ALJ erred in evaluating the lay witness evidence in the record;

(f)    the ALJ erred in assessing plaintiff's residual functional capacity; and

(g)    the ALJ erred in failing to call a vocational expert to testify regarding other
       jobs plaintiff could perform.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the

reasons set forth below, recommends that while the ALJ's decision should be reversed, this

matter should be remanded to the Commissioner for further administrative proceedings.

Although oral argument has been requested in this matter, the undersigned finds such argument

to be unnecessary here.

DISCUSSION

       This Court must uphold the Commissioner's determination that plaintiff is not disabled if

the Commissioner applied the proper legal standard and there is substantial evidence in the

record as a whole to support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir.

1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v.

Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a

preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

REPORT AND RECOMMENDATION - 3

1   Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one

2   rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler,

3   749 F.2d 577, 579 (9th Cir. 1984).

4   I.       Additional Evidence Submitted to the Appeals Council

5        The record contains a letter written by a lay witness, Russ Parsons, which was submitted

6   for the first time to the Appeals Council, and which reads in relevant part:

> I recently spoke with Heidi Woodsum . . .  She has requested a letter
> confirming her stay at Lost Lake RV Resort . . . that my wife and I managed
> during the winter of 2006.
>        Miss Woodum inquired about a small space to rent in our park.  She
> had very little money and was having a difficult time.  My wife and I offered
> her a space, no wages, in exchange for working security at night in the resort.
> Making sure campfires were out, patrolling the park and checking people in at
> the gate.
>        After a short period of time we requested that Miss Woodsum check
> restrooms, sweep side walks and minor general maintenance.
>        Within a few weeks Miss [W]oodsum complained of elbow pain and
> had a hard time using her arm.  She began missing duties from sleeping in too
> late.  She stated she couldn't handle working for us and appeared sad and
> depressed.  We agreed the job was more than she could handle and had  to let
> her go and she moved out of the park.
>        My wife and I liked her a great deal but needed someone we could rely
> on to preform [sic] her duties. . . .

Tr. 16.  Although there is no date on the letter, plaintiff states Mr. Parsons was not located until

less than two months after the ALJ issued his decision. (Dkt. #24, p. 7).  In its decision denying

plaintiff's request for review, the Appeals Council stated it had "considered the reasons" she

disagreed with the ALJ's decision "and the additional evidence" submitted, but found it did "not

provide a basis for changing the" ALJ's decision. Tr. 1-2.

        Plaintiff argues the letter from Mr. Parsons constitutes new and material evidence, which

the Appeals Council was required to not only consider and address, but also set forth its reasons

for rejecting it.  Plaintiff argues as well that the Appeals Council's error here and the fact that the

REPORT AND RECOMMENDATION - 4

letter calls into question the ALJ's determination that plaintiff may have engaged in substantial gainful activity, warrants reversal and remand of this matter.  Defendant disagrees, asserting the letter actually confirms plaintiff engaged in work-related activity.  Although the Appeals Council committed no error as argued by plaintiff, the undersigned finds remand for further proceedings is warranted in part due to the statements contained in the letter.

A.    The Appeals Council's Consideration of the Additional Evidence

Plaintiff cites to 20 C.F.R. § 404.970 and the Commissioner's Hearing, Appeals and Litigation Law Manual ("HALLEX")[3] I-3-3-6 for the proposition that the Appeals Council must consider new and material evidence submitted to it.  Plaintiff also cites to 42 U.S.C. § 405(b)(1) and Harmon v. Apfel, 103 F.Supp.2d 869, 873 (D.S.C. 2000) in asserting that "[f]airness and accuracy . . . require some explanation by the Appeals Council in terms of rejecting medical evidence submitted to it," and therefore, presumably, by extension to that from a lay witness such as Mr. Parsons. (Dkt. #17, p. 23).  Specifically, she asserts 42 U.S.C. § 405(b)(1) requires the Commissioner, which includes the Appeals Council, "to make findings of fact including reasons or bases on which the decision is based," and cites again to the HALLEX and two court of appeals decisions from the Fifth Circuit to argue that the Appeals Council must "specifically address" additional evidence submitted to it. (Dkt. #17, p. 23).

The undersigned finds plaintiff's argument to be wholly unpersuasive.  First, in regard to the Appeals Council's duty to consider "new and material evidence" submitted to it, 20 C.F.R. § 404.970(b) provides as follows:

If new and material evidence is submitted, the Appeals Council shall consider

---

[3] The HALLEX, unlike the Code of Federal Regulations, "is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members," and, "[a]s such, it does not prescribe substantive rules and therefore does not carry the force and effect of law." Moore v. Apfel, 216 F.3d 864, 868-69 (9th Cir. 2000).  Thus, the HALLEX is not binding on this Court.

REPORT AND RECOMMENDATION - 5

the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Thus, the Appeals Council only is required to "consider" and "evaluate" the additional evidence. No mention is made of any requirement that the Appeals Council explain its decision. Likewise, the HALLEX merely provides that the Appeals Council "will consider the additional evidence if it relates to the period on or before the ALJ's decision." HALLEX I-3-3-6A, B.

Plaintiff also has cited to no legal authority to support his assertion that the provision in 42 U.S.C. § 405(b)(1) – which directs the Commissioner "to make findings of fact . . . setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based" – applies to a decision denying review issued by the Appeals Council in addition to the Commissioner's final decision.[4]  Nothing in that statutory provision indicates it contemplates such decisions denying review.  It is true the district court in Harmon held that it was insufficient for the Appeals Council to simply identify the new material, state it had considered it and conclude it did not provide a basis for changing the ALJ's decision, but instead "sufficiently articulated" findings supported "by reasoning" and "evidence" concerning the material must be made. 103 F.Supp.2d at 873.

The Harmon court's opinion, however, relies solely on two of its own prior decisions as well as those of two other district courts in the Fourth Circuit, none of which, needless to say, are binding on this Court.  In addition, the district court in Harmon declined to follow an opinion –

---

[4] As noted above, when a request for review has been denied by the Appeals Council, the ALJ's decision becomes the Commissioner's final decision. See 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised."); see also 20 C.F.R. § 416.1481 (same).

REPORT AND RECOMMENDATION - 6

albeit unpublished – from the Fourth Circuit holding that:

> The Appeals Council in its decision did not engage in extensive analysis of the additional evidence but simply identified the evidence, stated that it had considered the evidence, and concluded that the evidence did "not provide a basis for changing the Administrative Law Judge's decision." At least one court of appeals has specifically rejected the claim that the Appeals Council must "articulate its own assessment of the additional evidence." *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.1992). We agree with this conclusion and further note that the regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision. *See* 20 C.F.R. § 404.970(b) (1999).

<u>Hollar v. Commissioner of Social Security Admin.</u>, 194 F.3d 1304, 1999 WL 753999 at *1 (4th Cir. Sept. 23, 1999). [5]  In <u>Browning</u>, the Eight Circuit held that it had "no jurisdiction to review

---

[5] As the <u>Harmon</u> court explained in its decision in relevant part:

> This court has previously [found] that a remand is appropriate when the Appeals Council fails to articulate any reason why, in light of the new evidence, it denied review, thereby making the determination of the ALJ the final decision of the Commissioner. *See Barden v. Apfel*, No. 5:98-2637-18BD, slip op. (D.S.C. Oct. 4, 1999); *Sumpter v. Apfel*, No. 5:97-2806-18JI, slip op. (D.S.C. Sept. 28, 1999).  Just before this court decided *Sumpter* and *Barden*, a Fourth Circuit panel decided this particular issue to the contrary. *See Hollar v. Commissioner of Soc. Security*, No. 98-2748, 1999 WL 753999, at *1 (4th Cir. Sept.23, 1999) (unpublished opinion) [noting it was unaware of *Hollar* when it issued *Barden* and *Sumpter* within only days after Court of Appeals filed its opinion]. . . .

> Because this court is not convinced by the *Hollar* panel's perfunctory analysis, the court declines to follow the unpublished opinion and continues to adhere to the analysis outlined in its two previous Orders.  In *Barden* and *Sumpter*, this court relied on published decisions of the Fourth Circuit in determining that the Appeals Council must articulate its reasons for rejecting new, additional evidence, so that a reviewing court may understand the weight the Commissioner attributed to the new evidence. In Social Security cases, a district court's function "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983). "A bald conclusion, unsupported by reasoning or evidence, is generally of no use to a reviewing court." *Jordan v. Califano*, 582 F.2d 1333, 1335 (4th Cir.1978).  Instead, the Commissioner "must indicate explicitly that all relevant evidence has been weighed and its weight." *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979). The "Appeals Council's failure to make specific findings concerning [new evidence submitted to it is] reversible error. Unless the [Commissioner] explicitly indicates the weight given to all the relevant evidence, [a district court] cannot determine on review whether the findings are supported by substantial evidence." *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir.1980). Therefore, the Commissioner "must present [the reviewing court] with findings and determinations sufficiently articulated to permit meaningful judicial review."

REPORT AND RECOMMENDATION - 7

the Appeals Council's denial of [the claimant's request for] review," explaining that:

>    The regulations permit an applicant who is dissatisfied with the ALJ's ruling to seek administrative review by the Secretary's Appeals Council. Here, Browning requested such review and submitted evidence not presented at the hearing for the Appeals Council's consideration.  In a letter explaining why it denied review, the Appeals Council stated that it had considered her newly submitted evidence, but had concluded that it "does not warrant a change in the Administrative Law Judge's decision that [she was] not disabled through September 30, 1987."  Under the regulations, when the Appeals Council denies review, the ALJ's determination stands as the Secretary's final decision. *See* 20 C.F.R. § 404.981; *Russell v. Bowen*, 856 F.2d 81, 83-84 (9th Cir.1988).

>    On appeal, Browning argues that the Appeals Council failed to make its own finding as to the severity of her mental impairment, and failed to articulate its own assessment of her additional evidence. These arguments misconstrue the function of the Appeals Council under the Secretary's regulations.

>    The regulations provide that Appeals Council review is not automatic but is limited to the circumstances defined in 20 C.F.R. § 404.970.  Section 404.970(a) provides that the Appeals Council "will review" the ALJ's decision in four circumstances – if it discovers an apparent abuse of discretion, an error of law, the absence of substantial supporting evidence, or "a broad policy or procedural issue that may affect the general public interest." Of particular importance here, § 404.970(b) adds a fifth situation in which the Appeals Council must review an ALJ's decision:

> > If new and material evidence is submitted, the Appeals Council . . . shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

*DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983). The Commissioner failed to do so in this case. This court is not a soothsayer and cannot base its conclusion on surmise and conjecture as to the reasons the Commissioner disregarded the new, additional evidence presented to it. "Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Arnold v. Secretary of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir.1977).

Id. at 872-73 (internal footnotes omitted).

REPORT AND RECOMMENDATION - 8

If the Appeals Council grants review, its decision (absent a remand to the ALJ) becomes the Secretary's final agency action that is subject to judicial review. Here, on the other hand, the Appeals Council considered the new evidence submitted by Browning and then denied review. Browning urges us to review that decision on the merits and to conclude that the Appeals Council should have granted review and reversed the ALJ on the basis of her new evidence. However, as the Secretary points out, our statutory jurisdiction is confined to review of the "final decision of the Secretary," 42 U.S.C. § 405(g). Therefore, we may only review the ALJ's final decision, not the Appeals Council's non-final administrative decision to deny review. *See Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir.1991); 20 C.F.R. § 404.981.

Browning argues that this position is inconsistent with our decision in *Williams v. Sullivan*, 905 F.2d 214 (8th Cir.1990), where we remanded because the Appeals Council had failed to consider evidence that was new and material within the meaning of § 404.970(b). We disagree. Jurisdiction to review whether the Appeals Council has complied with the procedural requirements of the regulations does not imply jurisdiction to review the Appeals Council's non-final, substantive decision to deny review. *Cf. Edmundson v. Turner*, 954 F.2d 510, 512-513 (8th Cir.1992).

Given that the Ninth Circuit does not appear to have expressed any opinion on this issue, the undersigned finds the reasoning of the Eighth and Fourth Circuits in Browning and Hollar respectively to be more persuasive, and therefore adopts it. Indeed, at least two other courts of appeal appear to have adopted that reasoning as well, finding that federal courts do not have the jurisdiction to perform the type of judicial review sought by plaintiff here. As, for example, the Seventh Circuit held in relevant part in Damato:

The regulation applicable to the Appeals Council review of the decision of an Administrative Law Judge states that "[i]n reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence. . . ." 20 C.F.R. § 416.1470(b). Damato interprets this regulation as imposing a duty on the Appeals Council "to articulate its consideration of the additional evidence" when it denies a request for review. The appellant has misconstrued the effect of the regulation, for it requires consideration of additional evidence when the Appeals Council *grants* review. The rationale for requiring articulation of the Secretary's assessment of evidence is "to permit an informed review" in the Appeals Court. *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir.1986). When the Appeals Council *denies* review in

REPORT AND RECOMMENDATION - 9

accordance with its discretion under 20 C.F.R. § 416.1467, the rationale for requiring articulation of its reasoning is absent, since the denial is not subject to judicial review-if the Appeals Council denies a request for review, the ALJ's decision becomes the final decision of the Secretary, *see* 20 C.F.R. § 416.1481, and judicial review is available only for final decisions of the Secretary. *See Califano v. Sanders*, 430 U.S. 99, 108, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977).  The cases that Damato cites for the proposition that the Appeals Council must articulate its reasons for rejecting evidence when denying review are inapposite, for they relate to final decisions of the Secretary, whether rendered by an ALJ or an Appeals Council. *See Zblewski v. Schweiker*, 732 F.2d at 78-79 (decision of ALJ constituting the Secretary's final decision failed to explain why he rejected certain evidence); *Ray v. Bowen*, 843 F.2d 998, 1003 (7th Cir.1988) (Appeals Council failed to address material evidence in its final decision); *Bauzo v. Bowen*, 803 F.2d at 923 (Appeals Council's final decision must be stated in a manner sufficient to permit an informed review).  Since the Appeals Council's denial of a request for review is not subject to judicial review and the applicable regulations do not require an explanation of the grounds for rejection, we hold that the Appeals Council may deny review without articulating its reasoning. . . .

945 F.2d at 988-89 (internal footnote omitted) (emphasis in original); <u>see also</u> <u>Mathews v. Apfel</u>, 239 F.3d 589, 594 (3rd Cir. 2001) (noting no statutory authority, source of district court's review authority, authorizes district court to review decisions denying review).

The remaining HALLEX provision and two Fifth Circuit cases plaintiff cites provide no further support for the approach she urges the Court to take.  HALLEX I-3-5-1 merely states the Appeals Council "will specifically address additional evidence or legal arguments or contentions submitted in connection with the request for review."  But on its face, this language at most just directs the Appeals Council to address what has been submitted to it, and does not mandate that any particular reasons for rejecting the submission be articulated.  In any event, even if such is not the case, as all of the Circuit Courts discussed above have determined, the jurisdiction of the federal courts does not extend to reviewing decisions denying review.

Neither of the two Fifth Circuit decisions cited by plaintiff contradict the holdings of the other circuit courts discussed herein.  That Court of Appeals' decision in <u>Hall v. Schweiker</u>, 660

REPORT AND RECOMMENDATION - 10

F.2d 116 (5th Cir. 1981), addresses neither the issue of what must be in a decision of the Appeals Council denying a request for review, nor the issue of the federal court's authority to review such decisions.  In <u>Newton v. Apfel</u>, 209 F.3d 448 (5th Cir. 2000), the Fifth Circuit merely noted that the Appeals Council had failed to "specifically address" new medical evidence the claimant had submitted to it, which violated HALLEX I-3-5-1. <u>Id.</u> at 459.  The Court of Appeals did not find, however, that HALLEX I-3-5-1 was violated because the Appeals Council failed to articulate with any mandated level of particularity the reasons for rejecting such evidence.  That is, there is no indication in <u>Newton</u> that the failure of the Appeals Council consisted of anything other than the Appeals Council's failure to actually note it addressed that evidence.

      B.     <u>Judicial Review of the Additional Evidence Submitted to the Appeals Council</u>

As noted above, plaintiff argues the statements in Mr. Parsons's letter warrant reversal and remand of the ALJ's decision.  The first issue the Court must address, though, is whether it has the authority to review that evidence.  Plaintiff asserts this evidence should be considered by the Court, because under <u>Ramirez v. Shalala</u>, 8 F.3d 1449 (9th Cir. 1993), additional evidence submitted for the first time to the Appeals Council becomes part of the record for judicial review. <u>See id.</u> at 1454.  The Ninth Circuit has held in <u>Ramirez</u>, as well as other subsequent decisions, that the reviewing court may consider such evidence in determining whether the ALJ's decision is supported by substantial evidence. 8 F.3d at 1451-52. [16]

---

[16]In <u>Ramirez</u>, the Ninth Circuit found specifically as follows:

Although the ALJ's decision became the Secretary's final ruling when the Appeals Council declined to review it, the government does not contend that the Appeals Council should not have considered the additional report submitted after the hearing, or that we should not consider it on appeal.  Moreover, although the Appeals Council "declined to review" the decision of the ALJ, it reached this ruling after considering the case on its merits; examining the entire record, including the additional material; and concluding that the ALJ's decision was proper and that the additional material failed to "provide a basis for changing the hearing decision."  For these reasons, we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council.

REPORT AND RECOMMENDATION - 11

In a more recent decision, however, the Ninth Circuit applied the standard set forth in sentence six of 42 U.S.C. § 405(g) – which is used to determine whether remand is appropriate in light of additional evidence submitted for the first time to the federal court[6] – in affirming the district court's refusal to remand the ALJ's decision based on the additional evidence submitted to the Appeals Council. See Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). To justify remand under this standard, a claimant must show that the additional evidence was both "new" and "material" to determining disability, and that he or she "had good cause for having failed to produce that evidence earlier." Id. at 462.

To be material, "the new evidence must bear 'directly and substantially on the matter in dispute.'" Id. (citation omitted). The claimant also must demonstrate a "reasonable possibility" the new evidence "would have changed the outcome of the administrative hearing." Id. (citation omitted). To demonstrate "good cause," the new evidence must be shown to be "unavailable earlier." Id. at 463. Good cause will not be shown by "merely obtaining a more favorable report once his or her claim has been denied." Id. Neither party has challenged the requirement that plaintiff must demonstrate both newness and materiality here.

As for the showing of good cause, there is an issue as to whether such is required in this circumstance. Indeed, in Mayes, the Ninth Circuit expressly stated it had not determined if that

---

Id.; see also Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing to Ramirez to find that additional materials submitted to Appeals Council properly may be considered, because Appeals Council addressed them in context of denying claimant's request for review); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (again citing to Ramirez in holding that evidence submitted to Appeals Council is part of record on review to federal court).

[6] Section 405(g) "authorizes district courts to review administrative decisions in Social Security benefit cases." Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir. 2002). Sentence four and sentence six of Section 405(g) "set forth the exclusive methods by which district courts may remand to the Commissioner." Id. A remand under sentence four is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits." Id. A remand under sentence six, however, "may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." Id.

REPORT AND RECOMMENDATION - 12

showing was required in regard to evidence submitted for the first time to the Appeals Council:

> We need not decide whether good cause is required for submission of new
> evidence to the Appeals Council, as [the claimant] conceded in her briefs that
> good cause was indeed required.  In a petition for rehearing, which we deny,
> [the claimant] raises for the first time the argument that 20 C.F.R. §
> 404.970(b)(2001) requires the Appeals Council to receive new evidence
> without regard to the issue of good cause.  Citing *Ramirez v. Shalala*, 8 F.3d
> 1449 (9th Cir.1993), [the claimant] belatedly argues that good cause is
> required only when new evidence is submitted to a district court.  <u>Mayes</u>
> <u>misapprehends</u> *Ramirez*. Because the parties agreed that the new evidence
> <u>submitted for the first time to the Appeals Council should be considered,</u> *id.* at
> <u>1451-52,  Ramirez does not address whether submissions to the Appeals</u>
> <u>Council are or are not subject to the good cause requirement.</u>

<u>Id.</u> at 461 n.3 (emphasis added).  Whether a showing of good cause in fact is required here has

not been argued or addressed by either party.  Given that defendant is not asserting a showing of

good cause is necessary, however, the undersigned shall presume defendant does not view such a

showing is required, at least in this case.

The question then is whether the statements contained in Mr. Parsons's letter are both

"new" and "material".  The undersigned finds they are.  In his decision, the ALJ discounted both

the medical opinion source evidence in the record and plaintiff's credibility in part on the basis

of evidence in the record that plaintiff engaged in work activity in 2006.  Specifically, the ALJ

pointed to a late January 2006 treatment note, in which Donna Elam, PA-C reported that plaintiff

had "to rise for work each day," that she had "been doing physical labor at a new job" – which

apparently involved "doing janitorial work" – and that she was "having to go back to work after

poor sleeping." Tr. 252.  Ms. Elam also stated they had "talked about modifying her activities in

the workplace" in regard to plaintiff's bilateral elbow tendonitis. Tr. 253.

As noted above, Mr. Parsons stated in his letter that shortly after plaintiff began to work

"security at night" for him and his wife "during the winter of 2006," they asked her to also check

the restrooms, sweep the sidewalks and do minor general maintenance. Tr. 16.  Mr. Parsons

REPORT AND RECOMMENDATION - 13

stated that "[w]ithin a few weeks" thereof, plaintiff "complained of elbow pain," had "a hard time using her arm," began "missing duties from sleeping in too late," could not "handle working for" them, and "appeared [to be] sad and depressed." Id.  In addition, Mr. Parsons stated that they all "agreed the job was more than she could handle," and that he and his wife "had to let her go." Id.  It is not entirely clear the work Mr. Parsons describes and the job reported by Ms. Elam are one and the same, with Ms. Elam stating in late January 2006, that plaintiff was doing physical labor involving janitorial work, while Mr. Parsons stated plaintiff performed security and what could be considered to be janitorial-type work during the winter of 2006.

Both parties, however, appear to agree that Ms. Elam and Mr. Parsons are talking about the same job-related activities performed by plaintiff.  The problems Mr. Parsons observed her having, furthermore, call into at least some question the nature and extent of the work activities plaintiff engaged in at the time.  As such, it is conceivable – that is, it is reasonably possible – that had the ALJ had possession of Mr. Parsons's letter before he issued his decision, the ALJ may have come to a different conclusion regarding the nature and extent of those job-related activities, as well as plaintiff's credibility and the medical opinion source evidence in the record, and thus ultimately plaintiff's ability to perform other jobs.  Mr. Parsons's statements, therefore, appear to be "material".  They also appear to meet the newness requirement, as it seems plaintiff was not able to locate Mr. Parsons until after the ALJ had issued his decision.

II.     The ALJ's Evaluation of the Work Plaintiff Allegedly Performed in 2006

Although, for the reasons discussed above, the undersigned finds remand of this matter is appropriate in part due to the additional evidence submitted to the Appeals Council, this does not mean the ALJ necessarily erred in giving weight to the work-related activities plaintiff was noted by Ms. Elam to have performed in 2006.  Clearly, the ALJ cannot be faulted for not taking into

REPORT AND RECOMMENDATION - 14

consideration the statements made by Mr. Parsons regarding those activities, as his letter was not available prior to the issuance of his decision.  Whether the statements in that letter are sufficient to call into question the validity of the weight the ALJ gave to Ms. Elam's comments remains to be seen on remand.  But given the evidence that *was* before the ALJ at the time, he did not err in treating that report as evidence of plaintiff's work performance.

At step one of the sequential disability evaluation process, the ALJ determined, as noted above, that plaintiff *may* have engaged in substantial gainful activity since her alleged onset date of disability, as evidenced by Ms. Elam's comments in her late January 2006 treatment note. Tr. 22.  The ALJ went on to state in relevant part that:

> There are no earnings posted to the claimant's earnings record since 2002. She denied at the hearing that she was working in 2006.  Given the specific details in the treatment note, I accord greater weight to the note than to claimant's testimony.  Because of the possibility of unreported income, I will *defer* the finding regarding substantial gainful activity, and I note that there are reflections on credibility given this report.

Id. (emphasis added).  As such, plaintiff is incorrect in arguing that the ALJ erred in finding she had engaged in substantial gainful activity during this period.

In addition, to the extent plaintiff is arguing that the ALJ could not rely on this evidence to call into question the credibility of plaintiff and the medical evidence in the record because she was not "hired" for the job nor did she receive any money for it, the undersigned finds plaintiff's argument to be without merit.  First, Ms. Elam uses the terms "janitorial work", "physical labor" and "job" to describe what plaintiff was doing.  It is difficult to believe those terms would have been employed by Ms. Elam, unless plaintiff herself had described what she did using the same or substantially similar terms.  Second, were the statements from Mr. Parsons to be considered, it is clear plaintiff was offered something of very real value – i.e., free rent – "in exchange for working." Tr. 16.  Thus, the fact that no wages or money changed hands, or that the arrangement

REPORT AND RECOMMENDATION - 15

lacked "the formality of . . . a 'real' job" is irrelevant. (Dkt. #17, p. 14).

Indeed, even at step one of the sequential disability evaluation process, in determining whether a claimant has engaged in substantial gainful activity, earnings "are not the end of the inquiry." Soria v. Callahan, 16 F. Supp.2d 1145, 1149 (C.D. Cal. 1997). That is, "[s]ubstantial work activity" is defined "as work that 'involves doing significant physical or mental activities' and 'is the kind of work usually done for pay or profit,'" and such work will be deemed to be gainful "whether or not a profit is realized." Id. at 1149-50 (quoting 20 C.F.R. § 404.1572(b) and 20 C.F.R. § 416.972(a), (b)). Thus, Ms. Elam's comments certainly constitute relevant evidence of potential substantial gainful activity as found by the ALJ.

The real issue here, though, is not whether the work described by Ms. Elam constitutes substantial gainful activity – given that the ALJ, as noted above, deferred his step one decision and thus did not actually find it to be such – but whether it was proper for the ALJ to base his credibility determinations, at least in part, on that evidence. Because Ms. Elam's comments are strong evidence that plaintiff was working at a job that required her to perform janitorial and/or other physical activities on a daily basis, those comments clearly are inconsistent with plaintiff's claims of total disability. The undersigned thus finds the ALJ acted properly.

Plaintiff calls this work "an unsuccessful work attempt" (Dkt. #17, p. 15 (emphasis in original)) – another term primarily relevant only at step one – but the record before the ALJ did not reflect any inability on her part to do that job. Even taking into account Mr. Parsons's statements, it still is not entirely clear the work plaintiff performed would be deemed as such.[7]

---

[7] Plaintiff claims she only did this job for three months, but there is nothing in Ms. Elam's comments, the statements in Mr. Parsons's letter or elsewhere in the record to support that claim. While it is true that Mr. Parsons used the terms "[a]fter a short period of time" to describe when plaintiff was asked to perform the non-security aspects of her work, and "[w]ithin a few weeks" thereafter to described when plaintiff began have problems performing her job duties (Tr. 16), there is no indication in the letter as to exactly how long she spent performing the above tasks in exchange for free rent.

REPORT AND RECOMMENDATION - 16

The undersigned also rejects plaintiff's contention that the ALJ should have questioned her regarding the nature of her activities as they were described by Mr. Parsons.  Clearly the ALJ could not have done so, since the letter Mr. Parsons wrote was not part of the record at the time he issued his decision.  Nevertheless, while the ALJ properly could, and did, look to Ms. Elam's report as evidence of a greater ability to function than plaintiff claimed, for the reasons discussed above, remand is appropriate in light of Mr. Parsons's letter for the purpose of reexamining the overall evidence concerning the work plaintiff performed in 2006.

III.    The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

1   F.2d 747, 755, (9th Cir. 1989).

2       The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

3   opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir.

4   1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can

5   only be rejected for specific and legitimate reasons that are supported by substantial evidence in

6   the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or

7   her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation

8   omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence

9   has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield</u>

10  <u>v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

11      In general, more weight is given to a treating physician's opinion than to the opinions of

12  those who do not treat the claimant. <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not

13  accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately

14  supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social</u>

15  <u>Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Thomas v. Barnhart</u>, 278 F.3d

16  947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An

17  examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining

18  physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute

19  substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at

20  830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

21      A.     <u>Mental Health Clinic Records</u>

22      Plaintiff underwent an initial mental health assessment performed at a mental health

23  clinic in late December 2004, at which time she was diagnosed with alcohol, cannabis, and

REPORT AND RECOMMENDATION - 18

nicotine dependence, all with physiological dependence, cocaine abuse, PTSD, a depressive

disorder not otherwise specified ("NOS") by plaintiff's own report, and an anxiety disorder also

by plaintiff's own report. Tr. 183.  Plaintiff also was diagnosed with a global assessment of

functioning ("GAF") score of 45.  It further was noted that plaintiff did not seem to have "any

cognitive barriers to treatment." Id.

        In his decision, the ALJ acknowledged this diagnostic assessment, but did not state what

weight, if any, he gave thereto. See Tr. 23.  Plaintiff argues the ALJ erred by failing to do so.

Defendant argues the ALJ simply was noting an opinion from one of plaintiff's treatment

providers, and thus committed no error.  The undersigned disagrees.  Even though plaintiff's

mental health treatment provider, who is not a licensed psychiatrist or psychologist, is not an

"acceptable medical source" as that term is defined in the Social Security Regulations, and

therefore her opinion may be given less weight than those from such sources, evidence from

"other sources," including other "medical sources," may be used to "show the severity" of a

claimant's impairments and their effects on his or her ability to work. Gomez v. Chater, 74 F.3d

967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d).

        The ALJ thus could not ignore the mental health clinic treatment note, nor could he just

mention that note without providing any analysis thereof.  Defendant is correct that the statement

of the treatment provider who performed the initial diagnostic assessment – that plaintiff did not

seem to have any cognitive barriers to treatment – in itself is not evidence of either an ability or

inability to work, as it concerns only plaintiff's treatment potential.  Nevertheless, as noted

above, plaintiff also was given a GAF score of 45.  "A GAF score of 41-50 indicates '[s]erious

symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an

inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (quoting

REPORT AND RECOMMENDATION - 19

Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) (GAF score in forties may be associated with serious impairment in occupational functioning).

A GAF score is "relevant evidence" of a claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  It is "a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Pisciotta, 500 F.3d at 1076 n.1.  As such, while a GAF score "is not essential" to the accuracy of, say, an ALJ's assessment of a claimant's residual functional capacity to perform work, that score certainly may be "of considerable help" with respect thereto. Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002).  Given that a GAF score of 45 is, as noted above, indicative of serious symptoms or a serious impairment is social or occupational functioning, it certainly is relevant evidence the ALJ should have addressed.

B.      Physician's Certificate for Medicaid

The record contains a "PHYSICIAN'S CERTIFICATE FOR MEDICAID" form, dated December 19, 2005, completed by John McRae, M.D., in which plaintiff was diagnosed with PTSD, a recurrent, severe major depressive disorder and alcohol dependence in full remission. Tr. 214.  Also in that form, Dr. McCrae stated plaintiff did not appear to be "very stable mood-wise," and she was cognitively "not nearly as limited" as she was both socially and in regard to stress tolerance. Id.  In addition, Dr. McCrae commented that plaintiff was tense and anxious, that she believed people were going to harm her and that he doubted she "could maintain/persist in a work setting" due to the above factors. Id.

Plaintiff argues the ALJ erred by ignoring and/or overlooking a certificate completed by Dr. McRae.  Defendant argues that because the ALJ properly rejected the opinions of Terilee

REPORT AND RECOMMENDATION - 20

Wingate, Ph.D., and because Dr. McRae did not personally observe or examine plaintiff, but instead based his own opinion on those of Dr. Wingate (see Tr. 214-18, 231-35), Dr. McRae's opinion does not constitute significant probative evidence.  This argument, however, fails for several reasons.  First, as explained in further detail below, the ALJ erred in rejecting Dr. Wingate's opinions.

Second, Dr. McRae is a non-examining physician.  By definition, therefore, he would not be in a position to personally observe or examine plaintiff, but his opinions, based on his review of the record, still would be substantial evidence if supported by other independent evidence in the record.  Indeed, given the fact that the ALJ erred in evaluating the opinions of Dr. Wingate, and that Dr. McRae opined that it was doubtful plaintiff would be able to maintain or persist in a work setting based on that independent medical evidence, at the very least Dr. McRae's opinion constitutes significant probative – if not, substantial – evidence the ALJ should have addressed. The ALJ's failure to address it, therefore, was erroneous.

C.    Dr. Wingate

In late June 2005, Dr. Wingate completed a state agency psychological/psychiatric form, in which she diagnosed plaintiff with alcohol dependence in early remission, PTSD and a depressive disorder NOS. Tr. 232.  Based on those diagnoses, Dr. Wingate opined that plaintiff was moderately limited her in ability to:

- understand, remember and follow complex tasks;
- learn new tasks;
- exercise judgment and make decisions;
- perform routine tasks;
- interact appropriately in public contacts;
- respond appropriately to and tolerate the pressures and expectations of a normal work setting; and
- control her physical or motor movements and maintain appropriate behavior.

REPORT AND RECOMMENDATION - 21

1    Tr. 233.  Dr. Wingate further opined, however, that with treatment, plaintiff "should be able to

2    work," and that, nevertheless, she would be limited to the extent noted above for a period of six

3    to nine months. Tr. 234.

4         Dr. Wingate completed another state agency psychological/psychiatric evaluation form in

5    late November 2005, in which she again diagnosed plaintiff with PTSD, as well as a recurrent,

6    severe major depressive disorder and alcohol dependence in full sustained remission. Tr. 216.

7    Dr. Wingate assessed the same mental functional limitations as she did in late June 2005, but this

8    time opined that plaintiff would be severely limited in her ability to respond appropriately to and

9    tolerate the pressures and expectations of a normal work setting, and markedly limited in her

10   ability to interact appropriately in public contacts, control her physical or motor movements and

11   maintain appropriate behavior. Tr. 217.  Dr. Wingate went on to opine that plaintiff would be so

12   limited for a period of one to two years. Tr. 218.  Although Dr. Wingate opined as well that with

13   continued sobriety and mental health treatment plaintiff might be able to work, it could "take a

14   few years" due to her symptoms of anxiety. Id.

15        A third psychological/psychiatric evaluation form was completed by Dr. Wingate in late

16   November 2008, in which plaintiff was diagnosed with the same conditions as were diagnosed in

17   late November 2005. Tr. 321.  Dr. Wingate indicated plaintiff had the same moderate limitations

18   as she did in the late June 2005 evaluation form she completed, but found marked limitations in

19   plaintiff's ability to perform routine tasks, interact appropriately in public contacts and respond

20   appropriately to and tolerate the pressures and expectations in a normal work setting, as well as

21   additional moderate limitations in her ability to understand, remember and follow simple tasks,

22   relate appropriately to co-workers and supervisors, and care for herself. Tr. 322.  In addition, Dr.

23   Wingate opined that plaintiff would have a difficult time working all day or even showing up for

work, that her prognosis was "poor" due a lack of improvement over the past three years in spite

of having received treatment, and that her limitations would last for a minimum of one to year

years, but they also could be "lifelong".[8] Tr. 322-23.

In regard to the above evaluation reports, the ALJ stated that to the extent Dr. Wingate

had relied on plaintiff's subjective complaints in forming the opinions contained therein, those

opinions were discounted, stating further in relevant that:

> . . . For example, on November 30, 2005 she assessed marked limitations in
> the claimant's ability to interact appropriately in public contacts and in her
> ability to control her movements and maintain appropriate behavior, and
> severe limitations in the ability to respond appropriately to and tolerate the
> pressures and expectations of a normal work setting . . . That assessment is
> controverted by [health clinic] treatment notes, which describe the claimant on
> November 11, 2005 as having an animated, interactive and spontaneous
> affect.  The treatment note of December 14, 2005 states that the claimant had
> excellent resolution of depressive symptoms on Effexor.  Dr. Wingate's
> assessments are further contradicted by evidence that the claimant was
> working in January 2006.  Her only work-related complaints at that time, as
> noted in the [health clinic] records, were fatigue because her significant other
> had a television in their bedroom, and some elbow pain . . .

Tr. 28.  Plaintiff argues these are insufficient reasons for rejecting Dr. Wingate's opinions.  The

undersigned agrees.  First, as plaintiff points out, Dr. Wingate did not just consider what plaintiff

reported, but also personally observed plaintiff and performed a mental status examination each

time as well. See Tr. 217, 233, 240, 322, 324-25; see also Sprague v. Bowen, 812 F.2d 1226,

1232 (9th Cir. 1987) (opinion based on clinical observations supporting mental diagnosis is

competent evidence); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (results of

mental status examination provide basis for diagnostic impression of psychiatric disorder, just as

results of physical examination provide basis for diagnosis of physical illness or injury); Sanchez

---

[8] A mental status examination form filled out at the same time by Dr. Wingate also contained a GAF score of 40.
See Tr. 325; Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (10th Cir. 2006) (quoting DSM-IV-TR at 32) ("A GAF
score of 31-40 is extremely low, and 'indicates . . . major impairment in several areas, such as work or school,
family relations, judgment, thinking, or mood.'").

REPORT AND RECOMMENDATION - 23

1   v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000).

2       Second, it is true as the ALJ pointed out that plaintiff's affect was noted on November 11,

3   2005, to be animated, interactive and spontaneous (Tr. 256), and that "excellent resolution of

4   [her] depressive symptoms" was reported on December 14, 2005 (Tr. 255).  Certainly, this does

5   call into at least some question Dr. Wingate's late June 2005 and late November 2005 opinions,

6   as they were based in part on diagnoses of depression. See Tr. 216, 232.  On the other hand, Dr.

7   Wingate also diagnosed plaintiff with PTSD, which certainly could account for many, if not all,

8   of the mental functional limitations noted in those opinions. See Tr. 216-17, 232-33.  Nor does

9   having an animated, interactive and spontaneous affect necessarily conflict with being limited in

10  the several cognitive areas Dr. Wingate noted as well. See Tr. 217, 233.

11      In addition, it also is true that, as discussed above, the evidence of plaintiff's performance

12  of job-related activities reported by Ms. Elam in January 2006, is inconsistent with the opinion of

13  Dr. Wingate that it "may take a few years" to "be able to work." Tr. 218.  However, as discussed

14  above, both the nature and extent of those activities is at issue, in light of the additional evidence

15  in regard thereto submitted to the Appeals Council warranting remand.  Here too, therefore, it is

16  not entirely clear that the evidence of plaintiff's work in 2006, is sufficient to undermine any of

17  the functional limitations or opinions regarding ability to work provided by Dr. Wingate.  Lastly,

18  the undersigned notes that while the ALJ did summarize it (see Tr. 24), he provided no specific

19  reasons for rejecting the opinions and limitations set forth in Dr. Wingate's late November 2008

20  evaluation report.  This too was error.

21      D.      Dr. Trowbridge

22      Another state agency psychological/psychiatric evaluation form was completed by Brett

23  C. Trowbridge, Ph.D., in mid-December 2006, at which time he diagnosed plaintiff with a major

depressive disorder, PTSD and alcohol dependence in remission for one year. Tr. 301. Based on

those diagnoses, Dr. Trowbridge found plaintiff was markedly limited in her ability to:

- interact appropriately in public contacts;
- respond appropriately to and tolerate the pressures and expectations of a normal work setting; and
- control physical or motor movements and maintain appropriate behavior.

Tr. 302. Dr. Trowbridge also found plaintiff to be moderately limited in her ability to learn new

tasks, exercise judgment and make decisions, and mildly to moderately limited in her ability to

relate appropriately to co-workers and supervisors. Id. While he opined as well that plaintiff

would be so limited for at least one year, Dr. Trowbridge further indicated that mental health

intervention likely would restore or substantially improve her ability to work for pay in a regular

and predictable manner. Id.

As he did with Dr. Wingate, the ALJ stated that to the extent Dr. Trowbridge relied on

plaintiff's subjective complaints in forming his opinions, those opinions were discounted. Tr. 28.

The ALJ further found in relevant part as follows in regard to Dr. Trowbridge's opinion:

> In December 2006 Dr. Trowbridge assessed marked limitations in several
> social factors. However, he relied on the claimant's Beck Depression
> Inventory, which is based solely on her self-report, and on her complaints of
> anxiety around people . . . The claimant did not fully disclose her relationships
> or work history to Dr. Trowbridge, such as her work activity in 2006. Again,
> to the extent Dr. Trowbridge relied on her self-reported symptoms, his opinion
> is discounted.

Id. Plaintiff argues the ALJ's reasons for rejecting Dr. Trowbridge's opinion are erroneous as

well. The undersigned disagrees. First, unlike Dr. Wingate, the marked limitations in social

functioning Dr. Trowbridge found appear to be based solely on plaintiff's subjective complaints

and on the type of psychological testing noted by the ALJ. See Tr. 302.

Plaintiff also has not challenged the ALJ's statement that such testing is based solely on

REPORT AND RECOMMENDATION - 25

plaintiff's self-reports and subjective complaints as well.  Given that, as discussed below, the ALJ did not err in discounting plaintiff's credibility overall, the ALJ was not remiss in rejecting the marked social limitations found by Dr. Trowbridge on this basis.  See Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted).

The undersigned also cannot fault the ALJ for rejecting the marked limitations found by Dr. Trowbridge on the basis that plaintiff's reported job-related activities and relationships with others were not made known to Dr. Trowbridge at the time of his opinion.  As to this last reason, plaintiff has not challenged it as a basis for rejecting Dr. Trowbridge's marked social limitations.  As for the unreported work activity, plaintiff argues she did not report it because she believed it was not work.  As discussed above, however, at least at the time she reported it to Ms. Elam, it appears she did consider it to be such, otherwise it is highly unlikely Ms. Elam would have used the terms "job", "work" and "working" to describe it.  While there may be some issue again as to the nature and extent of plaintiff's work activity at the time, at the very least had Dr. Trowbridge known about that activity, it likely would have had some effect on his ultimate opinion regarding her ability to function in a work setting.

E.      Dr. Comrie

A psychiatric review technique form was completed by Matthew Comrie, PsyD., in early April 2006, in which plaintiff was found to have mild restrictions in her activities of daily living, moderate difficulties in maintain social functioning and in maintaining concentration, persistence

REPORT AND RECOMMENDATION - 26

or pace, and no episodes of decompensation of an extended duration. Tr. 290. At the same time, Dr. Comrie completed a mental residual functional capacity assessment form, which contained a section titled "SUMMARY CONCLUSIONS," and in which he found plaintiff to be moderately limited in her ability to:

- maintain attention and concentration for extended periods;
- work in coordination with or proximity to others without being distracted by them;
- complete a normal workday and workweek without interruptions from psychologically based symptoms;
- perform at a consistent pace without an unreasonable number and length of rest periods;
- interact appropriately with the general public; and
- respond appropriately to changes in the work setting.

Tr. 294-95. In the narrative "FUNCTIONAL CAPACITY ASSESSMENT" section of that same form, Dr. Comrie further found that plaintiff retained "the ability to carry out simple and detailed instructions most of the time," that she "should not work intensively with the public" and that she could "adapt to a work routine," which is "predictable with few social demands in order to minimize stress." Tr. 296.

Referring solely to the above statements contained in that narrative section of the mental residual capacity assessment form Dr. Comrie completed, the ALJ found those statements to be "consistent" with the opinion of the medical expert who testified at the hearing, and thus the ALJ accorded it "great evidentiary weight." Tr. 27. Plaintiff argues the ALJ erred in giving such weight thereto because Dr. Trowbridge: (1) would not have been able to see Dr. Wingate's late November 2008 evaluation report showing worsening symptoms; and (2) was not aware of the nature and extent of plaintiff's job-related activities in 2006.

The undersigned agrees these reasons warrant remand for further consideration of Dr. Comrie's findings. First, while the mere fact that a non-examining physician does not have the

REPORT AND RECOMMENDATION - 27

benefit of reviewing medical evidence made part of the record subsequent to the issuance of his

or her opinion, will not prevent that opinion from being properly adopted – assuming, of course,

that it is consistent with other independent evidence in the record – here, as discussed above, the

ALJ erred in failing to evaluate Dr. Wingate's late November 2008 opinion.  Had the ALJ done

so, he may have come to a different conclusion concerning the findings and opinions of both of

these medical sources.  Second, again although Dr. Comrie cannot be faulted for not knowing

about Mr. Parsons's letter given he did not have access thereto, certainly that additional evidence

calls into at least some question plaintiff's work capabilities at the time.  Dr. Comrie's opinion

thus should be re-evaluated in light of both documents.

IV.     The ALJ's Assessment of Plaintiff's Credibility

        Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker,

694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility

determination.  Allen, 749 F.2d at 580.  In addition, the Court may not reverse a credibility

determination where that determination is based on contradictory or ambiguous evidence.  Id. at

579.  That some of the reasons for discrediting a claimant's testimony should properly be

discounted does not render the ALJ's determination invalid, as long as that determination is

supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

        To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

The ALJ "must identify what testimony is not credible and what evidence undermines the

claimant's complaints."  Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless

affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at 834.  The evidence as a

whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

In this case, the ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects of" her symptoms were "not credible" to the extent they were inconsistent with the ALJ's assessment of her residual functional capacity discussed below. Tr. 26-27.  In particular, the ALJ discounted plaintiff's credibility for the following reason:

> In discounting the claimant's testimony, I note that her social contacts and daily activities as described in the documentary evidence are inconsistent with what she reported to the Social Security Administration and that she described at the hearing.  For example, she told Dr. Wingate in June 2005 that she did chores to "pay" for her rent and that she went shopping, could be in public, and had friends from AA [Alcoholics Anonymous] . . .  At the hearing she testified to frequent contact with her children, yet in November 2008 she told Dr. Wingate that she avoided her family . . .  The treatment records from [her health clinic] refer several times to the claimant's significant other, a relationship that is inconsistent with the claimant's allegations that she is a social recluse. . . .

Tr. 27.  As noted above, the ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.

The record supports the ALJ in finding that plaintiff's prior reports – including those she made to her treatment providers – concerning her social functioning were indicative of a greater

REPORT AND RECOMMENDATION - 29

ability in that area than she had alleged.  See Tr. 38-41, 43, 45, 47, 218, 233-34, 255, 264, 303, 317, 322.  Plaintiff argues this is not a clear and convincing reason for discounting her credibility, because lay witness evidence in the record paints a different picture of her ability to function socially.  However, the ALJ, as discussed below, properly discounted the credibility of those lay witnesses as well.  In addition, to the extent their testimony conflicts with the evidence noted above indicating a greater ability to function socially, given it is the sole responsibility of the ALJ to resolve questions of credibility, his credibility determination will not be reversed even if it is based on contradictory or ambiguous evidence.  See id. at 579.

This is not the only valid reason the ALJ gave for discounting plaintiff's credibility.  The ALJ also noted that treatment records from plaintiff's health clinic referred "to resolution of" her "depressive symptoms on Effexor," and that there was "no indication" in the record she "sought a change in her antidepressant prescription," leading the ALJ "to conclude that the Effexor maintained its effectiveness." Tr. 27; see Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999) (ALJ may discount claimant's credibility on basis of medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Plaintiff has not challenged this reason for discounting her credibility.  Indeed, the record does show that in mid-December, 2005, "excellent resolution of depressive symptoms" was reported as a result of that medication. Tr. 255.  Nor was the ALJ remiss in presuming that the absence of any indication of a change in plaintiff's prescription was evidence of Effexor's continuing effectiveness.

The ALJ further discounted plaintiff's credibility because while she testified that she "did not seek counseling because of her limited medical coupons," she "told Dr. Wingate that she did not return to [her mental health clinic] because of conflicts" she had "there in the past." Tr. 27.  This is another example of plaintiff's prior inconsistent statements, which the ALJ again rightly

relied on to discount her credibility.  It also constitutes a valid reason for "cast[ing] doubt on

[plaintiff's] sincerity," in that it constitutes both a failure to assert a good reason for not seeking

or following a prescribed course of treatment, and a finding that her proffered reason for failing

to do so was not believable.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

Lastly, the ALJ discounted plaintiff's credibility for the following reasons:

> . . . The claimant did not report her work activity in 2006 and when asked
> about it at [the] hearing, denied that she worked in 2006.  Her substance abuse
> and legal history, and her overall marginal work history, further compromise
> her credibility.

Tr. 27.  As to the issue of work activity, plaintiff asserts she honestly testified at the hearing that

she was not working in 2006 (see Tr. 39), because she did not view her activities then as being

work.  But, as discussed above, the late January 2006 treatment note from Ms. Elam strongly

suggests plaintiff did believe she was working at the time. See Tr. 252.  As such, the ALJ had a

valid basis for disbelieving her hearing testimony to the contrary.

As defendant concedes, discounting plaintiff's credibility because of her substance abuse

and legal history was improper, given that it bears little relevance to plaintiff's tendency to tell

the truth.  Nevertheless, merely because one reason the ALJ gave for discounting plaintiff's

credibility was not proper, does not render the ALJ's credibility determination invalid, as long as

it is supported by substantial evidence in the record, as it is in this case. Tonapetyan, 242 F.3d at

1148.  Indeed, the last reason the ALJ gave for discounting plaintiff's credibility – a marginal

work history – also was valid. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ

properly found extremely poor work history negatively affected claimant's credibility regarding

her inability to work).

V.      The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

REPORT AND RECOMMENDATION - 31

take into account," unless the ALJ "expressly determines to disregard such testimony and gives

reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

link his determination to those reasons," and substantial evidence supports the ALJ's decision.

Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample,

694 F.2d at 642.

     The record contains statements from two lay witnesses concerning their observations of

plaintiff's symptoms and limitations. See Tr. 171-73.  With respect to those statements, the ALJ

found in relevant part as follows:

> The record contains statements from Greg Thompson and Hope Anderson.
> Mr. Thompson stated that when he first met the claimant in November 2003
> she was homeless, living in a tent and recently divorced.  Mr. Thompson
> rented a room to her.  He stated that since that time the claimant has become
> more reclusive.  She is tearful most of the time.  She does not finish anything
> she starts.  Ms. Anderson stated that she has known the claimant for three
> years.  She stated that the claimant had a rapid decline in her ability to handle
> stress and a decline in her attention span.  She is depressed, withdrawn, easily
> aggravated and has missed appointments because she can't face going out.
> She is "completely unable to focus" and cannot carry on a subject of
> conversation for more than five minutes.  She has lost weight drastically.  She
> "has never been able to even think about a job."  She never finishes tasks . . .
>
> I give little weight to the statements of Mr. Thompson and Ms. Anderson, as
> their descriptions of the claimant as a tearful recluse are inconsistent with the
> documentary evidence.  That evidence shows that the claimant has been active
> in AA, had normal mental status examination findings with a normal affect
> when seen at [her health clinic], and was working in 2006.  The [health clinic]
> records repeatedly mentioned the claimant's significant other.  The fact that
> the claimant was able to maintain such a relationship further detracts from the
> reliability of the lay witness statements.

Tr. 26.  These are valid reasons for discounting the statements of the two lay witnesses.

     Plaintiff argues the ALJ erred in discounting those statements on the basis of her work-

REPORT AND RECOMMENDATION - 32

related activities in 2006.  Given that the ALJ did not have possession of Mr. Parsons's letter

when he issued his decision, he cannot be faulted for discounting the lay witness statements on

the basis of Ms. Elam's notation that plaintiff performed work at the time.  Nevertheless, as

explained above, that letter does at least call into some question the nature and extent of that

work, thereby warranting remand in part on that basis.  Nevertheless, the inconsistencies between

the lay witness statements and the other evidence in the record – including plaintiff's own self-

reports – regarding social functioning, and the normal mental status examinations noted by the

ALJ, do constitute germane reasons.  As such, the ALJ did not err in discounting the credibility

of those statements overall here.

VI.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

        If a disability determination "cannot be made on the basis of medical factors alone at step

three of the evaluation process," the ALJ must identify the claimant's "functional limitations and

restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p,

1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at

step four to determine whether he or she can do his or her past relevant work, and at step five to

determine whether he or she can do other work. Id.  It thus is what the claimant "can still do

despite his or her limitations." Id.

        A claimant's residual functional capacity is the maximum amount of work the claimant is

able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's

inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the

ALJ must consider only those limitations and restrictions "attributable to medically determinable

impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the

claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be

REPORT AND RECOMMENDATION - 33

1    accepted as consistent with the medical or other evidence." Id. at *7.

2         As noted above, the ALJ assessed plaintiff with the residual functional capacity to

3    perform a full range of work at all exertional levels, along with the following non-exertional

4    limitations:

5              . . . she can carry out simple and detailed instructions, should not work
6              intensively with the public, and can adapt to a predictable work routine
               with few social demands.
7

8    Tr. 25 (emphasis in original).  Plaintiff argues the ALJ erred in assessing this RFC in light of the

9    errors asserted above.  Although, as discussed above, the ALJ properly assessed plaintiff's

10   credibility, properly evaluated the lay witness evidence in the record, and properly rejected the

11   opinion of Dr. Trowbridge, the ALJ did err in evaluating the other medical evidence in the record

12   for the reasons set forth herein.  The additional evidence submitted to the Appeals Council also

13   casts doubt on the ALJ's assessment, and thus the ultimate accuracy thereof.  Remand, therefore,

14   is appropriate for this reason as well.

15

16   VII.   The ALJ's Failure to Call a vocational Expert

17         If the claimant cannot perform his or her past relevant work at step four of the disability

18   evaluation process, at step five, the ALJ must show there are a significant number of jobs in the

19   national economy the claimant is able to do.  Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

20   1999); 20 C.F.R. §§ 404.1520(d)-(e).  There are two ways that the ALJ can to this: "(a) by the

21   testimony of a vocational expert, or (b) by reference to the [Commissioner's] Medical-

22   Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2" (the "Grids").  Tackett, 180 F.3d at

23   1100-1101 (emphasis in original); see also Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir.

24   2001).  The ALJ's ability to rely on the Grids is limited, however, as noted by the Ninth Circuit

25   in describing their purpose and function:

26

REPORT AND RECOMMENDATION - 34

In some cases, it is appropriate for the ALJ to rely on the Medical-Vocational Guidelines to determine whether a claimant can perform some work that exists in "significant numbers" in the national economy.  The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment. . . .

The Guidelines present, *in table form*, a short-hand method for determining the availability and numbers of suitable jobs for a claimant.  These tables are commonly known as "the grids."  The grids categorize jobs by their physical-exertional requirements and consist of three separate tables-one for each category: "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work."[9] . . . Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience.  For each combination of these factors, . . . the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements.

This approach allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims. . . .

The Commissioner's need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitations. . . . In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work.

Tackett, 180 F.3d at 1101 (emphasis in original) (internal citations and footnote omitted).

If, on the other hand, a claimant has "significant non-exertional impairments," those impairments "may make reliance on the grids inappropriate."[10] Id. at 1101-02; Osenbrock, 240 F.3d at 1162 (ALJ cannot rely on Grids where claimant has significant non-exertional impairments); Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (Grids inapplicable when they do not completely describe claimant's abilities and limitations).  As explained below, proper use of the Grids depends in each case upon the nature and extent of the claimant's impairments and

[9]However, "[I]f a claimant is found able to work the full range of heavy work this is 'generally sufficient for a finding of not disabled.'" Tackett, 180 F.3d at 1101 n.5 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00).

[10] Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION - 35

limitations:

> The ALJ must apply the grids if a claimant suffers only from an exertional impairment . . . In such cases, the rule is simple: the grids provide the answer. Where the grids dictate a finding of disability, the claimant is eligible for benefits; where the grids indicate that the claimant is not disabled, benefits may not be awarded.  *However, where a claimant suffers solely from a nonexertional impairment . . . the grids do not resolve the disability question . . . other testimony is required.*  In cases where the claimant suffers from both exertional and nonexertional impairments, the situation is more complicated. First, the grids must be consulted to determine whether a finding of disability can be based on the exertional impairments alone. . . . If so, then benefits must be awarded.  However, if the exertional impairments alone are insufficient to direct a conclusion of disability, then further evidence and analysis are required.  In such cases, the ALJ must use the grids as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." . . . In short, the grids serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairment.

Cooper v. Sullivan, 880 F.2d 1152, 1155-56 (9th Cir. 1989) (emphasis added) (internal citations and footnotes omitted).

In this case, the ALJ referenced Social Security ("SSR") 85-15, 1985 WL 56857, to find plaintiff's non-exertional limitations did "not significantly limit the range of work contemplated by the" Grids, and thus to find her "'not disabled' . . . under the framework" thereof. Tr. 29. Plaintiff argues that this was improper in light of the significant non-exertional limitations she had – as evidenced by the medical and other evidence in the record – and that the ALJ should have had the vocational expert testify at the hearing.  The undersigned agrees.

Under SSR 85-15, where the only limitations are mental, the ALJ must consider whether the claimant could "be expected to perform unskilled work." 1985 WL 56857 at *4.  That Social Security Ruling goes on to state:

> . . . The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision,

REPORT AND RECOMMENDATION - 36

coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

Id.  The Grids "are directly premised on the availability of jobs at the unskilled level," and "'reflect the potential occupational base of *unskilled* jobs for individuals who have severe impairments which limit their exertional capacities. . . .'" Ortiz v. Secretary of Health and Human Services, 890 F.2d 520, 526 (1st Cir. 1989) (quoting SSR 85-15, 1985 WL 56857 at *1 (emphasis added by court of appeals)).  As long as a non-exertional limitation is "substantially consistent with the performance of the full range of unskilled work," therefore, the Grids retain their "relevance and the need for vocational testimony is obviated." Id.

Defendant argues SSR 85-15 is inapplicable here, because the ALJ concluded plaintiff's residual functional capacity did not include a substantial impairment in any of the above-noted abilities. See Tr. 29.  As can be seen, however, the ALJ's RFC assessment includes the limitation that plaintiff could only adapt to a predictable work routine with few social demands.  It is not at all clear that this is the same as a general ability to deal with changes in a routine work setting, and, indeed, would seem not to be.  In addition, because the ALJ erred in evaluating much of the medical evidence in the record, and thus plaintiff's residual functional capacity, it also is not clear that the limitations noted by the ALJ are the only ones supported by the record.  As such, remand for further consideration at this step – including, if deemed necessary, consideration of the testimony of a vocational expert – is warranted as well.

VIII.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the

REPORT AND RECOMMENDATION - 37

proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations

omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

unable to perform gainful employment in the national economy," that "remand for an immediate

award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further

administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
> claimant's] evidence, (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made, and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled were such
> evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain with respect to the medical evidence in the record, plaintiff's work-

related activities in 2006, her residual functional capacity, and her ability to perform other jobs

existing in significant numbers in the national economy, this matter should be remanded to the

Commissioner for further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded

plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the

Commissioner for further administrative proceedings in accordance with the findings contained

herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

REPORT AND RECOMMENDATION - 38

72(b), the parties shall have **fourteen (14) days** from service of this Report and

Recommendation to file written objections thereto. <u>See also</u> Fed. R. Civ. P. 6.  Failure to file

objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474

U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is

directed set this matter for consideration on **May 7, 2010**, as noted in the caption.

DATED this 12th day of April, 2010.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 39